■ ANONYMOUS, Appellant, v HIGH SCHOOL FOR ENVIRONMENTAL STUDIES et al., Respondents. [820 NYS2d 573]—

Order, Supreme Court, New York County (Faviola A. Soto, J.), entered September 15, 2004, which granted plaintiff's motion to compel the production of certain documents to the extent of ordering defendants to produce plaintiff's complete records, to provide to the court for in camera review (i) the employment records and personnel file demanded, (ii) the files or documents of the Special Commissioner of Investigation of the Department of Education and (iii) allegations by other students concerning incidents involving the teacher prior to the incidents in the complaint, and denying her demand for the class student roster and police reports; order, same court and Justice, entered on or about November 30, 2004, which ordered defendants to retrieve the documents produced to the court, to remove their post-its and markings from those documents and files, and to comply with the court's September 15, 2004 order by producing the documents for in camera inspection; and order, same court and

Justice, entered on or about November 20, 2004, which, following in camera inspection, directed defendants to produce certain material to plaintiff and to provide to the court for in camera inspection documents relating to prior complaints or incidents which were omitted from the first production, or an appropriate affidavit stating that a search had been undertaken and no such documents had been located, unanimously modified, on the law, to the extent that the defendants are required to comply in all respects with plaintiff's document demand of March 2004 within 30 days of service of a copy of this order with notice of entry; and defendants' answer stricken and the matter remanded for trial on the issue of damages unless defendants pay plaintiff's attorney costs in the sum of $7,500, within 30 days of service of a copy of this order with notice of entry, and otherwise affirmed, with costs in favor of plaintiff.

Plaintiff was 14 years old and a student at defendant high school at the time of the acts giving rise to the complaint. The complaint alleges that defendants hired Anthony Correnti in September 1997 as a substitute teacher without having performed adequate background checks. Before that, Correnti had engaged in pedophilic activities. Afterwards, he began engaging in pedophilic behavior with the students at the high school, and in 1998 began engaging in sexual relations with at least one minor student, videotaping the sex acts.

Plaintiff alleges that Correnti began to aggressively pursue her both in and out of school in an attempt to have sex with her. On or about February 8, 1999, Correnti "statutorily raped, assaulted, molested, sodomized, and abused" plaintiff (the rape) in his classroom after classes ended. During the rape, he also instructed plaintiff and another minor "to perform deviant oral and vaginal sexual acts upon him and upon each other." He videotaped the rape of plaintiff and her classmate and took pornographic photographs of them. He threatened plaintiff to force her not to tell anyone what happened.

During that month, defendants approved Correnti's application for licensure, and elected to employ him as a full-time music teacher. Approximately seven months after two students reported that Correnti engaged in criminal and/or deviant sexual behavior with them, the Special Commissioner of Investigation of the Department of Education issued a report concluding that Correnti engaged in inappropriate sexual misconduct and should be fired. However, defendants continued to permit Correnti to teach, have access to, and be alone with students.

From February 8, 1999, the date of the first incident, through the fall of 1999, Correnti continuously harassed plaintiff about

sex, talking about it with her constantly and pressuring and attempting to coerce her to have sex with him. In the fall of 1999, he was able to persuade her to go to his home, where he forced her to watch the videotape that he had taken of her and her classmate. The videotape depicted the teacher and the two students "performing deviant sexual and oral acts upon each other and sodomizing each other." He then took plaintiff and her classmate to a hotel, where he "proceeded to statutorily rape, sodomize, assault, molest, and abuse" plaintiff and instructed her and the other student "to perform deviant oral and sexual acts upon each other and upon him."

In September 2000, defendants permitted Correnti to resign from the school despite the investigative finding that he should be fired, and gave him a favorable reference without mentioning the finding that he had engaged in sexual misconduct. On January 18, 2001, the police raided Correnti's home and found more than 10,000 photographs of children and more than 500 video clips of children, including videos depicting infants as young as four years old being raped and sodomized.

Correnti was indicted in Manhattan on February 7, 2001, on 80 counts of statutory rape, sodomy and sexual abuse arising out of the above-described assaults. He was also indicted in Suffolk and Nassau counties. He pleaded guilty and is now serving a lengthy prison sentence.

Plaintiff commenced this action in December 2003, asserting causes of action for negligence, negligent hiring, negligent retention, negligent supervision, inadequate protection of plaintiff, and gross negligence. Defendants answered in January 2004.

Plaintiff served her first request for production of documents and things in March 2004. She sought, inter alia, her own school records and documents related to Correnti's hiring, retention, supervision, discipline, termination, and complaints about or claims against or investigations into him, and other related documents.

In an undated response, defendants objected to each of the 26 categories of documents as "vague, confusing, overbroad, unduly burdensome and not likely to lead to information which is material and necessary to the prosecution of this matter."

They also based certain objections on "prevailing case law regarding discovery of investigative reports," Public Officers Law § 87 (2) and § 89 (2), Civil Rights Law § 50-b, and the Buckley Amendment (20 USC § 1232g). They did not provide a privilege log pursuant to CPLR 3122, or move for a protective order pursuant to CPLR 3103. Plaintiff moved to compel pursuant to CPLR 3124, in July 2004. In her accompanying affirma-

tion, plaintiff's counsel stated that on May 18, 2004, plaintiff received two incomplete documents in reply: an incomplete safety school plan and incomplete student records of plaintiff.

Plaintiff properly argued that defendants' boilerplate objections were "purely conclusory and devoid of reason" and should be stricken, that "a second set of specious objections" based on Public Officers Law § 87 (2) and § 89 (2) failed to provide any facts in support and should be stricken, and that defendants' specious claim that the documents were protected by the Buckley Amendment and Civil Rights Law § 50-b was unsupported by a demonstration of the applicability of either of these statutes.

In August 2004, defendants opposed the motion to compel on the grounds that Correnti's personnel records were privileged pursuant to the Public Officers Law and irrelevant, that investigative documents and reports maintained by the Special Commissioner of Investigation (SCI) were privileged and irrelevant, that complaints involving other students were privileged pursuant to the Civil Rights Law and otherwise irrelevant, and that plaintiff could not obtain police records from defendant Board of Education. In the alternative, defendants requested that Correnti's personnel file and any SCI investigations be produced for in camera review.

The court granted plaintiff's motion to the extent of directing defendants to produce directly to plaintiff her complete records by October 13, 2004, and to the court for in camera review, by the same date, (i) the demanded employment records and personnel file, (ii) the files or documents by the SCI, if any, or the appropriate affidavit that such file does not exist, and (iii) allegations by other students concerning incidents involving Correnti that occurred prior to the incidents in the complaint. It found that plaintiff was not entitled to production of the class student roster or to the production of police records, if any, from these defendants.

On October 25, defendants submitted Correnti's personnel file and documents generated by the SCI to the court, but counsel stated in the cover letter that as to the court's order to provide allegations by other students, there were no such allegations, and that as to plaintiff's complete records, those had been provided to plaintiff previously. Counsel then reiterated the arguments against disclosure that had been made in opposition to plaintiff's motion to compel.

By letter to the court dated November 3, 2004, plaintiff's counsel replied to Corporation Counsel's October 25 letter, which she had "just recently" received. Counsel advised, inter

alia, that as of that date she had not received a single document in response to the court's order and that Corporation Counsel had told her she was not obligated to produce any documents based on a reading of that order.

In a decision dated November 5, 2004, the court observed that although defendants had been ordered on September 14, 2004 to submit certain documents for an in camera inspection by October 13, 2004, they still had not produced the documents. The court noted that following receipt of a copy of plaintiff's October 17, 2004 letter demanding the production of said documents, chambers spoke with counsel by telephone on October 20 and granted an extension until October 22 for defendants to comply, and that at the end of the day, defendants requested and were granted by the part clerk, by telephone, another extension until October 25.

The court stated that on October 25, the documents were produced for an in camera inspection with a four-page letter setting forth defendants' position. "In addition, however, defendants, without leave of court and by ex-parte communication, labeled and otherwise demarcated the documents and files produced for the in camera inspection with defendants' opinions and apparent instructions to the court as to whether the documents should be produced. Indeed, so littered were the documents with these post-its and writings that the court is hampered in its in camera inspection."

Moreover, the court stated, "even at this late date and with a compliance conference scheduled for November 10," defendants still had not supplied the affidavit as to the completeness of the records produced. Accordingly, the court ordered defendants to retrieve from it the documents provided, to remove the post-its and markings from those documents and files, and to comply with the court's order by producing the documents for in camera inspection by 4:30 on November 8, 2004.

On November 12, 2004, in anticipation of a conference scheduled for that afternoon, plaintiff's counsel forwarded to the court a release she had obtained from Correnti, sworn to on November 4, 2004, of all his employment, personnel, union and investigative records in the control of the Board of Education, the school, and the central records access officer in the Office of Legal Services.

The court issued a third order on November 24, 2004 stating that it had indicated by yellow highlight those documents, in whole or in part, that defendants were to produce from the personnel file, the court having found those materials discoverable and relevant, and directed defendants to produce this ma-

terial to plaintiff by December 14, 2004. Defendants were not required to produce documents the court had not designated as discoverable. The court noted that "the release signed by the assailant and provided to the court by plaintiff did not end the court's inquiry and does not govern."

The court noted that documents, if any, relating to prior complaints or incidents had not been produced for this in camera inspection, and directed defendants to provide to the court, by December 16, 2004, the omitted documents or an appropriate affidavit stating that a search had been undertaken and no such documents had been located.

On December 14, 2004, in response to this order, defendants produced a heavily redacted copy of Correnti's letter of resignation, dated August 25, 1999, and a heavily redacted letter from the Superintendent of Manhattan High Schools to Correnti, dated October 26, 1999, terminating his service with the Board of Education effective immediately.

It is beyond cavil that "New York has long favored open and far-reaching pretrial discovery" (*DiMichel v South Buffalo Ry. Co.*, 80 NY2d 184, 193 [1992], *cert denied sub nom. Poole v Consolidated Rail Corp.*, 510 US 816 [1993]; *accord Kavanagh v Ogden Allied Maintenance Corp.*, 92 NY2d 952, 954 [1998]). "There shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof" (CPLR 3101 [a]; *Northway Eng'g v Felix Indus.*, 77 NY2d 332, 335 [1991]). The words "material and necessary" as used in the statute are to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist in the preparation for trial (*Allen v Crowell-Collier Publ. Co.*, 21 NY2d 403, 406-407 [1968]; *Roman Catholic Church of Good Shepherd v Tempco Sys.*, 202 AD2d 257, 258 [1994]; *Johnson v National R. R. Passenger Corp.*, 83 AD2d 916 [1981]). In the instant case, there can be no dispute that the documents and information sought in the discovery demands at issue are material and necessary to the fair resolution of this action.

Plaintiff's complaint contains allegations supporting each of plaintiff's document requests and defendants' answer unequivocally denies these allegations. Notwithstanding the relevance and need for these documents, defendants resorted to boilerplate allegations that the requested documents are privileged under various statutes.

Initially, we note that defendants failed to object to the March 24, 2004 document demand within the 20 days set forth in CPLR 3122 (a). Such failure to object to the demand generally limits

our review to the question of privilege under CPLR 3101 (b) (*Roman Catholic Church of Good Shepherd*, 202 AD2d at 257; *Alaten Co. v Solil Mgt. Corp.*, 181 AD2d 466 [1992]).

The burden of establishing that the documents sought are covered by a certain privilege rests on the party asserting the privilege (*Spectrum Sys. Intl. Corp. v Chemical Bank*, 78 NY2d 371, 377 [1991]). In the instant case, defendants failed to assert anything more than boilerplate claims of privilege, which are insufficient as a matter of law (*New York State Elec. & Gas Corp. v Lexington Ins. Co.*, 160 AD2d 261 [1990]). Finally, CPLR 3122 (b) sets out specific requirements for a detailed privilege log. Defendants failed to comply with any part of CPLR 3122 (*see Nab-Tern-Betts v City of New York*, 209 AD2d 223 [1994]).

We need not determine whether the motion court improperly exercised its discretion in allowing the March document demand to go largely unanswered for over 18 months, as we are vested with the corresponding power to substitute our discretion for that of the motion court (*Andon v 302-304 Mott St. Assoc.*, 94 NY2d 740, 745 [2000]). Unfortunately, in the third order under review, the motion court did not identify the documents defendants submitted to it for in camera review, the documents it found to be discoverable and the documents it found to be not discoverable, and did not provide any legal basis for its decisions or indeed any discussion. Plaintiff simply cannot know whether defendants have complied with the order. Indeed, plaintiff contends that defense counsel has claimed and continues to claim that defendants are not obligated to turn over any specific document because the court has previously ruled on it—but since plaintiff has no record itemizing the documents the court has ruled on, she has no basis on which to dispute defense counsel's claim.

The deficiencies in the underlying orders undoubtedly have hampered our ability to review the content of the court's ruling. However, of greater significance is the havoc that the defendants' abuse of the provisions of CPLR article 31 has wrought on plaintiff's case. Plaintiff is now no further along in discovery than she was when the demand was first served in March 2004. We hold that defendants' failure to comply with any provision of article 31 constitutes a waiver of any objections to disclosure. Furthermore, defendants' failure to supply a privilege log or indeed, any timely substantive responses to the court's numerous orders amounts to a waiver of any claim of privilege for the documents sought. Defendants are directed to comply with the March 2004 demand forthwith.

Finally, defendants' conduct warrants reimbursement of the

time and expense incurred by plaintiff's attorney in pursuing discovery *(United States Fire Ins. Co. v J.R. Greene, Inc.,* 272 AD2d 148 [2000]). Concur—Buckley, P.J., Sullivan, Williams, Catterson and McGuire, JJ.