Calcagno v Graziano (2021 NY Slip Op 06896)





Calcagno v Graziano


2021 NY Slip Op 06896


Decided on December 9, 2021


Appellate Division, Third Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered:December 9, 2021

531857 531865
[*1]Paul J. Calcagno Jr., Individually and on Behalf of Graziano Calcagno Development, LLC, et al., Appellants,
v
Anthony Graziano, Individually and as Manager of Graziano Calcagno Development, LLC, et al., Respondents.

Calendar Date:October 22, 2021

Before:Garry, P.J., Lynch, Clark, Pritzker and Colangelo, JJ.

Dennis B. Schlenker, Albany, for appellants.
Goldman Attorneys PLLC, Albany (Paul J. Goldman of counsel), for respondents.



Clark, J.
Appeals (1) from an order of the Supreme Court (Ceresia, J.), entered May 14, 2020 in Columbia County, which denied plaintiffs' motion to compel discovery, and (2) from an order of said court, entered August 13, 2020 in Columbia County, which granted defendants' motion for summary judgment dismissing the complaint.
Plaintiff Paul J. Calcagno Jr. is the manager and sole member of plaintiff Paul Calcagno Jr. Development, LLC and defendant Anthony Graziano is the president and majority shareholder of defendant Broadway Garage of Columbia County, Inc. In December 2015, Calcagno entered into a purchase and sale agreement wherein Calcagno agreed to purchase certain real property in the Town of Greenport, Columbia County for $385,000. According to plaintiffs, after Calcagno entered into the purchase and sale agreement, Graziano approached Calcagno and, upon Graziano's proposal, the two entered into a joint venture to operate "a used automobile dealership on the . . . property under the name and aegis of Broadway Garage." Shortly thereafter, upon the execution and filing of articles of organization with the Department of State, Calcagno and Graziano formed Graziano Calcagno Development, LLC (hereinafter the limited liability company) (see Limited Liability Company Law §§ 203, 209). The following day, Graziano provided a 10% down payment on the property. In January 2016, Calcagno and Graziano entered into an operating agreement, which stated that Graziano was the general manager of the limited liability company and that, as members, Calcagno and Graziano each held a 50% interest in the limited liability company.
In March 2016, after it was discovered that the property would have to undergo remediation for environmental contamination, Calcagno and the sellers of the property executed an addendum to the sale contract, agreeing to a reduction of the sale price to $180,000 and the assignment of Calcagno's rights under the contract to the limited liability company. The sale of the property closed in April 2016, with Graziano paying the remaining balance of the purchase price and the property being deeded to the limited liability company. In October 2016, the limited liability company entered into a lease agreement with Broadway Garage, agreeing to lease the property — for a period of five years — for $3,791.67 per month. That month, Broadway Garage began operating a used car dealership on the property.
In November 2018, plaintiffs commenced this action seeking damages, as well as declarations that (1) a joint venture exists between Calcagno, Graziano, the limited liability company and Broadway Garage, (2) the operation of Broadway Garage on the property and any profits or losses derived therefrom are part of the joint venture, and (3) Calcagno, as a 50% member of the limited liability company, is entitled to 50% of the profits derived from Broadway Garage's operations on the property. Defendants joined issue, asserting various affirmative defenses[*2], as well as a counterclaim for fraud. In December 2019, plaintiffs moved to compel defendants to comply with their discovery requests. Defendants opposed the motion, arguing that they had responded to plaintiffs' discovery demands and that the motion failed to, among other things, identify the responses alleged to be deficient and establish that the discovery demanded was material and necessary to their claims. Supreme Court agreed with defendants and, in an order entered in May 2020, denied the motion on the basis that plaintiffs failed to sustain their burden of proving that defendants' discovery responses were deficient or improper. Defendants thereafter moved for summary judgment dismissing the complaint, arguing that a joint venture never existed and that, therefore, plaintiffs were not entitled to damages or declaratory relief. In August 2020, Supreme Court granted defendants' motion and dismissed the complaint. Plaintiffs appeal from both the May 2020 order and the August 2020 order.[FN1]
We affirm. Plaintiffs argue that Supreme Court erred in denying their motion to compel defendants to comply with their discovery requests. CPLR 3101 (a) mandates "full disclosure of all matter material and necessary in the prosecution or defense of an action." "A party seeking discovery must satisfy the threshold requirement that the request is reasonably calculated to yield information that is 'material and necessary' — i.e., relevant" (Forman v Henkin, 30 NY3d 656, 661 [2018]; accord Catlyn & Derzee, Inc. v Amedore Land Devs., LLC, 166 AD3d 1137, 1141 [2018]). "The words, 'material and necessary,' are . . . to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity" (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406 [1968]; accord Forman v Henkin, 30 NY3d at 661; see Rote v Snyder, 195 AD3d 1130, 1131 [2021]). As trial courts are vested with broad discretion in controlling discovery, we will not disturb their discovery determinations in the absence of a clear abuse of discretion (see Melfe v Roman Catholic Diocese of Albany, N.Y., 196 AD3d 811, 813 [2021]; Fox v Fox, 309 AD2d 1056, 1057 [2003]).
A review of plaintiffs' motion to compel makes clear that this is not a case where defendants wholly failed to respond to discovery demands. Rather, plaintiffs take issue with the adequacy and completeness of defendants' responses to their discovery demands, particularly their interrogatories and their demand for electronically stored information. However, plaintiffs' complaints in this regard are general and conclusory in nature. Plaintiffs do not identify the particular responses with which they take issue. Nor do they address or demonstrate how the alleged deficiencies are material and necessary to particular claims. Under such circumstances, we discern no abuse of discretion in Supreme Court's determination [*3]that plaintiffs failed to make the requisite showing for a motion to compel and to deny the motion accordingly (see Aaron v Pattison, Sampson, Ginsberg & Griffin, P.C., 69 AD3d 1084, 1085-1086 [2010]).
Turning to defendants' motion for summary judgment dismissing the complaint, plaintiffs argue that discovery was incomplete and that Supreme Court should have therefore dismissed the motion as premature. "Although a motion for summary judgment may be opposed with the claim that facts essential to justify opposition may exist but that such material facts are within the exclusive knowledge and possession of the moving party, the party opposing the motion must make an evidentiary showing to support that conclusion" (2 N. St. Corp. v Getty Saugerties Corp., 68 AD3d 1392, 1395-1396 [2009] [internal quotation marks, brackets and citations omitted], lv denied 14 NY3d 706 [2010]; see CPLR 3212 [f]; Bailey v Dimick, 129 AD3d 1165, 1166 [2015]). Here, plaintiffs failed to make the requisite evidentiary showing, offering nothing more than conclusory assertions that further discovery was needed. Moreover, plaintiffs had ample time and opportunity to conduct discovery during the 13 months between the commencement of this action and defendants' motion (see Calabrese Bakeries, Inc. v Rockland Bakery, Inc., 102 AD3d 1033, 1035 [2013]).[FN2] Accordingly, Supreme Court properly rejected plaintiffs' contention that defendants' motion for summary judgment was premature (see Ivory Dev., LLC v Roe, 135 AD3d 1216, 1223-1224 [2016]; Bailey v Dimick, 129 AD3d at 1166-1167; 2 N. St. Corp. v Getty Saugerties Corp., 68 AD3d at 1396).
On the merits of the motion, plaintiffs assert that Supreme Court should have denied defendants' motion because there are triable issues of fact as to whether a joint venture exists. "A joint venture is an association of two or more persons to carry out a single business enterprise for profit, for which purpose they combine their property, money, effects, skill and knowledge" (Kaufman v Torkan, 51 AD3d 977, 979 [2008] [internal quotation marks and citation omitted]; see Gramercy Equities Corp. v Dumont, 72 NY2d 560, 565 [1988]). However, "[t]o establish the existence of a joint venture agreement, it is not enough that two parties have agreed together to act in concert to achieve some stated objective" (Anderson v Kernan, 133 AD3d 1234, 1235 [2015]; see Matter of Steinbeck v Gerosa, 4 NY2d 302, 317 [1958], appeal dismissed 358 US 39 [1958]). To prove the existence of a joint venture, the plaintiff must demonstrate that there was "an agreement manifesting the intent of the parties to be associated as joint venturers, a contribution by the coventurers to the joint undertaking (i.e., a combination of property, financial resources, effort, skill or knowledge), some degree of joint proprietorship and control over the enterprise[,] and a provision for the sharing of profits and losses" (Schultz v Sayada, 133 AD3d 1015, 1016 [2015] [internal quotation [*4]marks and citation omitted]; see Alper Rest., Inc. v Catamount Dev. Corp., 137 AD3d 1559, 1561 [2016]). An agreement to enter into a joint venture may be oral and may be inferred from the totality of the parties' conduct in performance of the joint venture (see Schultz v Sayada, 133 AD3d at 1016; Chalmers v Eaton Corp., 71 AD2d 721, 722 [1979]).
Defendants established their prima facie entitlement to summary judgment dismissing the complaint with evidence showing that none of the elements required for a joint venture was met here. Specifically, Graziano averred — in a sworn affidavit — that there was never an agreement between him, Calcagno, the limited liability company and/or Broadway Garage to form a joint venture. He stated that the only agreement that existed between him and Calcagno was an agreement to form the limited liability company for the purpose of establishing a landlord-tenant relationship between the limited liability company and Broadway Garage, so as to receive a return on the capital invested in the limited liability company. However, Graziano asserted that, aside from an initial $2,500 contribution, Calcagno failed to invest any capital in the limited liability company. Graziano stated that he solely funded the down payment and acquisition costs associated with the property, as well as the costs of environmental testing, remediation, renovation and site preparation. Graziano asserted that, as a result of Calcagno's default in payment of his one-half share of the limited liability company's capital costs, Calcagno's interest in the company was diluted to .39% under the terms of the operating agreement.[FN3]
With respect to the element of joint proprietorship and control over the enterprise, Graziano's affidavit, together with the limited liability company's operating agreement and the bylaws of Broadway Garage, provided prima facie evidence that Calcagno was not a shareholder of Broadway Garage, that he did not act as the supervisor or manager of either Broadway Garage or the limited liability company and that he did not perform any substantive role in Broadway Garage's car dealership operation on the property. Finally, Graziano asserted that there was no agreement that Calcagno and/or the limited liability company would share in the profits or losses of Broadway Garage. According to Graziano, Calcagno never purchased a car for Broadway Garage, provided any working capital to Broadway Garage or acted as a guarantor for repayment on Broadway Garage's lines of credit. In our view, based on the foregoing and other record evidence, Supreme Court correctly concluded that defendants came forward with prima facie proof negating all elements required to find the existence of a joint venture (compare Alper Rest. Inc. v Catamount Dev. Corp., 137 AD3d at 1561).
Additionally, we agree with Supreme Court that the waiver and merger clauses of the limited liability company's operating agreement further demonstrated defendants' entitlement [*5]to summary judgment dismissing the complaint by establishing that any joint venture that may have previously existed was extinguished upon the creation of the limited liability company. The waiver clause provides that "[e]ach member waives any rights the [m]ember might otherwise have to share or participate in such other interests or activities of any other [m]ember or the [m]ember's [a]ffiliates." Under the operating agreement, the term "affiliates" includes, among other things, any individual, corporation, partnership, association, limited liability company, trust, estate or other entity in which a member owns more than 50% of the voting interests. In short, by agreeing to the waiver clause, Calcagno waived any rights he might have had to share or participate in Graziano's interest, as the majority shareholder, in Broadway Garage. The merger clause states, as relevant here, that the operating agreement "constitutes the complete and exclusive statement of the agreement among the [m]embers with respect to the subject matter thereof" and that "[i]t supersedes all prior written and oral statements, including any prior representation, statement, condition or warranty." Such clause provides prima facie proof that any alleged prior agreement to enter into a joint venture was superseded by operation of the waiver clause.
As defendants established their prima facie entitlement to summary judgment dismissing the complaint, the burden shifted to plaintiffs to come forward with evidentiary proof in admissible form demonstrating a triable issue of fact necessitating a trial (see Alvarez v Prospect Hosp., 68 NY2d 320, 320-321 [1986]; Freitag v Village of Potsdam, 155 AD3d 1227, 1229 [2017]). Plaintiffs failed to do so here. As Supreme Court noted, plaintiffs submitted evidence raising questions of fact as to some of the elements required to find a joint venture. For example, through Calcagno's sworn affidavit and certain documentary evidence, plaintiffs demonstrated Calcagno's contributions of effort to the purchase and development of the property for use as a car dealership. However, plaintiffs failed to raise a triable issue of fact as to whether there was an agreement to share in the losses of the alleged enterprise. Calcagno averred that the creation of the limited liability company and the purchase of the property for use as a used car dealership "evolved into a joint venture where [he and Graziano] agreed to share the profits and losses of th[e] venture." He asserted that his membership interest in the limited liability company included "a 50% financial interest in the profits from the used car dealership operated by Broadway Garage" at the property. However, aside from Calcagno's conclusory assertions, plaintiffs failed to produce any evidence demonstrating an agreement to share in the losses of Broadway Garage, so as to raise a question of fact in that regard.[FN4] Given that "[t]he failure to provide for the sharing of losses from the project [*6]is fatal to [plaintiffs'] claim that a joint venture was created" (Slabakis v Schik, 164 AD3d 454, 455 [2018], lv denied 32 NY3d 912 [2018]), we need not address whether plaintiffs raised a triable issue of fact with respect to the merger and waiver clauses of the limited liability company's operating agreement. Accordingly, as plaintiffs failed to come forward with sufficient proof to defeat defendants' prima facie showing of entitlement to summary judgment dismissing the complaint, Supreme Court properly granted defendants' motion (see generally Alvarez v Prospect Hosp., 68 NY2d at 326-327).
To the extent that we have not addressed any of plaintiffs' remaining arguments, they have been reviewed and found to be lacking in merit.
Garry, P.J., Lynch, Pritzker and Colangelo, JJ., concur.
ORDERED that the appeal from the order entered May 14, 2020 is dismissed, with costs.
ORDERED that the order entered August 13, 2020 is affirmed, with costs.



Footnotes

Footnote 1: Plaintiffs' appeal from the May 2020 nonfinal order must be dismissed, as the right to appeal such order terminated upon entry of the August 2020 final order (see Matter of Gran Dev., LLC v Town of Davenport Bd. of Assessors, 124 AD3d 1042, 1043 n 2 [2015]; Smith v Town of Colonie, 100 AD3d 1132, 1133 [2015]). However, plaintiffs' appeal from the August 2020 order brings the issues raised on the appeal from the May 2020 order up for review (see CPLR 5501 [a] [1]; Jackson v State of New York, 94 AD3d 1166, 1167 n 1 [2012]).

Footnote 2: With respect to plaintiffs' contention that they did not yet have the opportunity to conduct depositions, an amended preliminary conference stipulation and order reflects that, at the time that defendants moved for summary judgment dismissing the complaint, the deadline to conduct depositions had passed.

Footnote 3: Graziano's assertions in this respect were supported by documentary evidence, including stenographic minutes of a meeting of the members of the limited liability company.

Footnote 4: The purported profit-sharing agreement submitted by plaintiffs, which defendants maintain is fraudulent, does not address losses incurred by Broadway Garage and is therefore insufficient to raise a question of fact as to the profit/loss sharing element.