Aesch v Lambarski (2024 NY Slip Op 03849)

Aesch v Lambarski

2024 NY Slip Op 03849

Decided on July 18, 2024

Appellate Division, Third Department

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered:July 18, 2024

534850
[*1]Jennifer Aesch, Appellant,
v
David Lambarski et al., Respondents.

Calendar Date:June 5, 2024

Before:Pritzker, J.P., Lynch, Ceresia, Fisher and Mackey, JJ.

Rosenberg Law Firm, Brooklyn (Jonathan Rosenberg of counsel), for appellant.
Napierski, VanDenburgh, Napierski & O'Connor, LLP, Albany (Eugene D. Napierski of counsel), for respondents.

Pritzker, J.P.
Appeal from a judgment of the Supreme Court (Rebecca A. Slezak, J.), entered January 31, 2022 in Fulton County, upon a verdict rendered in favor of defendants.
In 2014, plaintiff sought treatment from a podiatrist, defendant David Lambarski, for complaints of pain and discomfort in her left foot. Lambarski determined that surgery was necessary and performed a joint fusion on plaintiff's great toe on her left foot. Approximately four months after the joint fusion, plaintiff began complaining of persistent pain in the ball of her left foot and, over the next six months, Lambarski utilized conservative treatment methods which included cortisone injections and custom orthotic inserts. These conservative methods did not yield lasting pain relief and ultimately a second surgery was performed in which the third and fourth metatarsal heads were removed from plaintiff's left foot. Soon thereafter, plaintiff ceased seeking treatment from Lambarski and subsequently sought treatment from other podiatrists and underwent three corrective surgeries to remedy the imbalance that she alleges was caused by Lambarski's surgeries.
Plaintiff thereafter commenced this action against Lambarski and his employer, defendant Northeast Foot Care PLLC, alleging negligence, medical malpractice and lack of informed consent. Discovery and motion practice ensued, and the case ultimately proceeded to a jury trial. At the trial, competing expert opinions were elicited and the jury returned a verdict in favor of defendants. Plaintiff immediately moved to set aside the verdict as against the weight of the evidence and defendants opposed. Supreme Court denied plaintiff's motion, finding that the verdict was supported by the evidence. Plaintiff appeals.
Plaintiff challenges the verdict as to the medical malpractice cause of action as being against the weight of the evidence and, as such, argues that Supreme Court abused its discretion in denying the motion to set aside the verdict.[FN1] "A jury verdict will not be set aside unless the trial proof preponderated so heavily in favor of the losing party that the verdict could not have been reached on any fair interpretation of the evidence" (Fitzpatrick v Tvetenstrand, 228 AD3d 7, 12 [3d Dept 2024] [internal quotation marks and citations omitted]; see Killon v Parrotta, 28 NY3d 101, 107 [2016]). "In a medical malpractice action, . . . the plaintiff bears the burden of proving by a preponderance of the evidence that the defendant[s] deviated or departed from accepted medical practice and that such deviation or departure was a proximate cause of the plaintiff's injury" (Rabideau v Weitz, 169 AD3d 1330, 1331 [3d Dept 2019] [citations omitted], lv denied 33 NY3d 912 [2019]; accord Salovin v Orange Regional Med. Ctr., 174 AD3d 1191, 1192 [3d Dept 2019]).
Here, the jury was presented with expert testimony from both plaintiff and defendants as to whether Lambarski deviated from the accepted standard of medical care in his treatment of plaintiff. Additionally[*2], plaintiff and defendants entered into evidence numerous lengthy medical records. For her part, plaintiff presented the expert testimony of Richard Martin Jay, a podiatric surgeon, who reviewed plaintiff's medical records, including those created by Lambarski, as well as the deposition testimony of plaintiff and Lambarski. Jay ultimately opined that Lambarski deviated from the standard of care by failing to attempt more conservative treatments before performing the joint fusion, as well as in performing the fusion due to its permanency. Jay did, however, recognize that Lambarski's notes indicate that prior doctors had attempted conservative treatment methods without success. Moreover, Jay could not opine as to whether a joint fusion was warranted in plaintiff's case because he had not personally examined plaintiff and because of a missing X-ray, which he would also need to review to form an opinion. Based on what information Jay did have, he testified regarding alternative surgeries that, in his opinion, Lambarski should have considered. Jay further opined that Lambarski failed to take into consideration plaintiff's foot parabola and how fusing the joint would affect the rest of plaintiff's foot, which is a deviation from the standard of care. This failed consideration is what Jay believes led to further complications in plaintiff's left foot that ultimately led to Lambarski performing the second surgery. Jay opined that, again, Lambarski failed to consider plaintiff's foot parabola and the loss of two metatarsal heads, which ultimately led to plaintiff's balance issues. On cross-examination, it was revealed that, despite testifying that he was an active surgeon and averring as such in an affidavit, Jay had not performed surgery in approximately two years.
Plaintiff herself also testified, asserting that the only issue that she was experiencing when she presented to Lambarski was rubbing of her hammertoes on her left foot that caused her pain when she hiked a lot. Plaintiff denied telling Lambarski that she had chronic pain in her foot, but acknowledged that she told him that she had a surgery on her left foot seven years prior. Plaintiff recalled that Lambarski told her that she had a bunion on her great toe that Lambarski was going to scrape, but he never informed her of the risks of the surgery. Plaintiff also testified that Lambarski never informed her about what a fusion is, nor the risks associated with such surgery and had she known the risks, she would not have moved forward. After the surgery, plaintiff experienced considerable pain in her whole foot and she kept returning to Lambarski to seek pain relief, to no avail. Plaintiff testified that Lambarski never informed her of the risks associated with the second surgery and that the surgery did not alleviate the pain, rather it only made it worse. Plaintiff explained that her foot was not sturdy and caused her to fall.
Mark Lentini, a doctor of podiatric medicine, opined that Lambarski [*3]complied with the accepted standard of care — specifically, that plaintiff had already undergone conservative treatment measures to no avail and, therefore, Lambarski did not need to repeat that process before proceeding to surgery. As to the selection of joint fusion over other operations, Lentini opined that a joint fusion is the "gold standard" for stability in the foot and, based on the observations noted in plaintiff's medical records, Lambarski's selection of joint fusion was "in accordance with good and accepted care for a podiatric surgeon." Moreover, Lentini explained that the alternative surgeries suggested by Jay were more invasive. Lentini opined that the pain plaintiff experienced following the surgeries was not caused by the surgeries, but rather by arthritis appearing in the other joints, and that Lambarski complied with the standard of care in affording proper consideration to the foot parabola when determining plaintiff's treatment.
Lambarski testified that on the first examination of plaintiff, she had little to no cartilage in the first metatarsal phalangeal joint which caused a lack of mobility as well as pain and was indicative of the severity of her arthritis. Lambarski testified that given his examination of plaintiff coupled with the failed conservative treatment methods, surgery was the logical course of action. Lambarski testified that he discussed surgery options other than the joint fusion with plaintiff before ultimately proceeding with it, which Lambarski described as "the gold standard to add stability" while still allowing for a high functioning foot. After the first surgery, plaintiff did not have any complaints of joint pain at the fusion site and her foot was straight and in position. When plaintiff later began to complain of pain in the ball of her foot, Lambarski created custom inserts for plaintiff and administered cortisone shots before ultimately proceeding to surgery. When plaintiff began to describe the pain as unbearable, Lambarski recommended surgery and, after being advised of the risks, plaintiff decided to move forward. Additionally, Lambarski testified that he did not discuss plaintiff's foot parabola with her prior to the fusion because that surgery addressed the pain in her great toe and, at the time, she did not have any significant pain elsewhere in her foot.
The conflicting medical evidence, testimony and expert opinions offered by the parties "presented a credibility determination for the jury, which, as was its purview, it resolved against plaintiff[ ]" (Rabideau v Weitz, 169 AD3d at 1332; accord Salovin v Orange Regional Med. Ctr., 174 AD3d at 1194). According deference to the jury's credibility determinations, we do not find "the trial proof preponderated so heavily in favor of [plaintiff] that the verdict could not have been reached on any fair interpretation of the evidence" (Fitzpatrick v Tvetenstrand, 228 AD3d at 12 [internal quotation marks and citations omitted]; see Killon v Parrotta[*4], 28 NY3d at 107-108). "As such there is no basis upon which to disturb Supreme Court's denial of plaintiff['s] motion to set aside the verdict" (Rabideau v Weitz, 169 AD3d at 1332-1333 [citations omitted]; see O'Connor v Kingston Hosp., 166 AD3d 1401, 1403 [3d Dept 2018]; Skelly-Hand v Lizardi, 111 AD3d 1187, 1190 [3d Dept 2013]).
Plaintiff further contends that information relating to her mental health diagnosis should not have been subject to disclosure. Initially, plaintiff failed to object to the disclosure of her medical records that include references to her diagnosis of schizophrenia within the 20-day window prescribed by CPLR 3122 (a); therefore, "appellate review is limited to determining whether the requested material is privileged under CPLR 3101 or the demand is palpably improper" (Saratoga Harness Racing v Roemer, 274 AD2d 887, 888 [3d Dept 2000]; see LaBuda v LaBuda, 175 AD3d 39, 44 [3d Dept 2019]; Murphy v Hamilton, 90 AD3d 1294, 1295 [3d Dept 2011]). Privileged documents, including those relating to physician-patient relationships, are exempt from disclosure unless privilege is waived (see CPLR 3101 [b]; 4504 [a]; Perez v Fleischer, 122 AD3d 1157, 1159 [3d Dept 2014], lv dismissed 25 NY3d 985 [2015]). "A litigant will be deemed to have waived the privilege when, in bringing or defending a personal injury action, that person has affirmatively placed his or her mental or physical condition in issue" (Dillenbeck v Hess, 73 NY2d 278, 287 [1989] [citation omitted]; see Kanaly v DeMartino, 162 AD3d 142, 146 [3d Dept 2018]). "For purposes of disclosure, the threshold inquiry is not whether the materials sought are private but whether they are reasonably calculated to contain relevant information" (Forman v Henkin, 30 NY3d 656, 666 [2018]; see Calcagno v Graziano, 200 AD3d 1248, 1250 [3d Dept 2021]).
Here, inasmuch as plaintiff brought an action sounding in personal injury, she has placed her mental and physical condition at issue and therefore waived privilege to documents and information referencing such (see CPLR 3101 [b]; 4504 [a]; Arons v Jutkowitz, 9 NY3d 393, 409 [2007]; Kanaly v DeMartino, 162 AD3d at 146). Although, on its face, plaintiff's diagnosis of schizophrenia may be unrelated to the problems arising from her left foot surgeries, this diagnosis is contained in records that are related to plaintiff's foot surgeries, such as the medical records from her primary care physician created at her presurgery examination for the surgery performed by Lambarski. Furthermore, plaintiff also claimed lost income due to defendants' malpractice, which makes her schizophrenia diagnosis relevant as plaintiff has received disability benefits due to her schizophrenia since she was in her 20s. As such, plaintiff waived her privilege through commencement of the action, and the material that was requested and turned over in discovery was "reasonably calculated to contain relevant information" (Forman v Henkin, 30 NY3d at 666; see Calcagno v Graziano[*5], 200 AD3d at 1250).
Finally, to the extent preserved, we turn to plaintiff's contention that Supreme Court erred in allowing evidence at trial relating to her diagnosis of schizophrenia. "Since trial courts are accorded wide discretion in making evidentiary rulings, absent an abuse of discretion, those rulings should not be disturbed on appeal. To be admissible, evidence must be relevant and its probative value outweigh the risk of any undue prejudice" (Mazella v Beals, 27 NY3d 694, 709 [2016] [internal quotation marks, brackets, ellipsis and citations omitted]; see Orser v Wholesale Fuel Distribs. CT, LLC, 173 AD3d 1519, 1522-1523 [3d Dept 2019], lv denied 34 NY3d 909 [2020]). Where a plaintiff places a certain issue before a jury, they open the door to further evidence being introduced on the issue (see Owens v Ascencio, 210 AD3d 686, 688 [2d Dept 2022]; Grechko v Maimonides Med. Ctr., 188 AD3d 832, 834-835 [2d Dept 2020]). Here, in plaintiff's opening statement the issue of her schizophrenia was put before the jury as her counsel, while describing plaintiff's "difficult life," explained that "[i]n [plaintiff's] teens, she was diagnosed through no fault of her own, with a mental health condition that made it difficult for her to work." Then, during plaintiff's testimony, she testified that she went to Italy to seek medical attention in an attempt to relieve the chronic pain felt after Lambarski's surgeries. Thereafter, prior to cross-examination of plaintiff, defendants indicated their intention to use plaintiff's mental health records to impeach her testimony regarding the Italy trip as she told her therapist that she did not go to Italy, directly contradicting her testimony. Supreme Court allowed defendants, over plaintiff's objection, to question plaintiff regarding the mental health records. While there is no doubt a stigma around mental health and, more specifically, schizophrenia, here there was a high probative value in this evidence as, not only did plaintiff open the door to it, but it also directly contradicted her testimony. Moreover, having reviewed the trial transcript in full, defendants' references to plaintiff's mental health conditions were very limited in scope. And while there are references within the medical records, these references are sparse given that over 1,000 pages of medical records were admitted by the parties at trial. Accordingly, it cannot be said that Supreme Court abused its discretion in allowing the admission of the challenged evidence as it was relevant and the probative value outweighed the risk of prejudice (see People v Brewer, 28 NY3d 271, 277 [2016]; Mazella v Beals, 27 NY3d at 709). To the extent not specifically addressed herein, we have examined plaintiff's remaining contentions and find them to be without merit.
Lynch, Ceresia, Fisher and Mackey, JJ., concur.
ORDERED that the judgment is affirmed, with costs.

Footnotes

Footnote 1: Plaintiff does not challenge the weight of the evidence as it relates to her causes of action based on negligence and lack of informed consent; therefore, any appeal therefrom has been abandoned (see Prediletto v Syed, 166 AD3d 1456, 1457 n 1 [3d Dept 2018]).