DiFIORE, Chief Judge:
In this personal injury action, we are asked to resolve a dispute concerning disclosure of materials from plaintiff's Facebook account.
Plaintiff alleges that she was injured when she fell from a horse owned by defendant, suffering spinal and traumatic brain injuries resulting in cognitive deficits, memory loss, difficulties with written and oral communication, and social isolation. At her deposition, plaintiff stated that she previously had a Facebook account on which she posted "a lot" of photographs showing her pre-accident active lifestyle but that she deactivated the account about six months after the accident and could not recall whether any post-accident photographs were posted. She maintained that she had become reclusive as a result of her injuries and also had difficulty using a computer and composing coherent messages. In that regard, plaintiff produced a document she wrote that contained misspelled words and faulty grammar in which she represented that she could no longer express herself the way she did before the accident. She contended, in particular, that a simple email could take hours to write because she had to go over written material several times to make sure it made sense.
Defendant sought an unlimited authorization to obtain plaintiff's entire "private" Facebook account, contending the photographs and written postings would be material and necessary to his defense of the action under CPLR 3101(a). When plaintiff failed to provide the authorization (among other outstanding discovery), defendant moved to compel, asserting that the Facebook material sought was relevant to the scope of plaintiff's injuries and her credibility. In support of the motion, defendant noted that plaintiff alleged that she was quite active before the accident and had posted photographs on Facebook reflective of that fact, thus affording a basis to conclude her Facebook account would contain evidence relating to her activities. Specifically, defendant cited the claims that plaintiff can no longer cook, travel, participate in sports, horseback ride, go to the movies, *886 **161 attend the theater, or go boating, contending that photographs and messages she posted on Facebook would ***660 likely be material to these allegations and her claim that the accident negatively impacted her ability to read, write, word-find, reason and use a computer.
Plaintiff opposed the motion arguing, as relevant here, that defendant failed to establish a basis for access to the "private" portion of her Facebook account because, among other things, the "public" portion contained only a single photograph that did not contradict plaintiff's claims or deposition testimony. Plaintiff's counsel did not affirm that she had reviewed plaintiff's Facebook account, nor allege that any specific material located therein, although potentially relevant, was privileged or should be shielded from disclosure on privacy grounds. At oral argument on the motion, defendant reiterated that the Facebook material was reasonably likely to provide evidence relevant to plaintiff's credibility, noting for example that the timestamps on Facebook messages would reveal the amount of time it takes plaintiff to write a post or respond to a message. Supreme Court inquired whether there is a way to produce data showing the timing and frequency of messages without revealing their contents and defendant acknowledged that it would be possible for plaintiff to turn over data of that type, although he continued to seek the content of messages she posted on Facebook.
Supreme Court granted the motion to compel to the limited extent of directing plaintiff to produce all photographs of herself privately posted on Facebook prior to the accident that she intends to introduce at trial, all photographs of herself privately posted on Facebook after the accident that do not depict nudity or romantic encounters, and an authorization for Facebook records showing each time plaintiff posted a private message after the accident and the number of characters or words in the messages. Supreme Court did not order disclosure of the content of any of plaintiff's written Facebook posts, whether authored before or after the accident.
Although defendant was denied much of the disclosure sought in the motion to compel, only plaintiff appealed to the Appellate Division.[1] On that appeal, the Court modified by limiting disclosure to photographs posted on Facebook that ***661 plaintiff intended to introduce at trial (whether pre-or post-accident) and eliminating the authorization permitting defendant to obtain data relating to post-accident messages, and otherwise affirmed ( 134 A.D.3d 529, 22 N.Y.S.3d 178 [2015] ). Two Justices dissented, concluding defendant was entitled to broader access to plaintiff's Facebook account and calling for reconsideration of that Court's recent precedent addressing disclosure of social media information as unduly restrictive and inconsistent with New York's policy of open discovery. The Appellate Division granted defendant leave to appeal to this Court, asking whether its order was properly made. We reverse, reinstate Supreme Court's order and answer that question in the negative. *887 **162 Disclosure in civil actions is generally governed by CPLR 3101(a), which directs: "[t]here shall be full disclosure of all matter material and necessary in the prosecution or defense of an action, regardless of the burden of proof." We have emphasized that "[t]he words, 'material and necessary', are ... to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity. The test is one of usefulness and reason" ( Allen v. Crowell-Collier Publ. Co. , 21 N.Y.2d 403, 406, 288 N.Y.S.2d 449, 235 N.E.2d 430 [1968] ; see also Andon v. 302-304 Mott St. Assoc. , 94 N.Y.2d 740, 746, 709 N.Y.S.2d 873, 731 N.E.2d 589 [2000] ). A party seeking discovery must satisfy the threshold requirement that the request is reasonably calculated to yield information that is "material and necessary"-i.e., relevant-regardless of whether discovery is sought from another party (see CPLR 3101[a][1] ) or a nonparty ( CPLR 3101[a][4] ; see e.g. Matter of Kapon v. Koch , 23 N.Y.3d 32, 988 N.Y.S.2d 559, 11 N.E.3d 709 [2014] ). The "statute embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility for ambush and unfair surprise" ( Spectrum Sys. Intl. Corp. v. Chemical Bank , 78 N.Y.2d 371, 376, 575 N.Y.S.2d 809, 581 N.E.2d 1055 [1991] ).
The right to disclosure, although broad, is not unlimited. CPLR 3101 itself "establishes three categories of protected materials, also supported by policy considerations: privileged matter, absolutely immune from discovery ( CPLR 3101[b] ); attorney's ***662 work product, also absolutely immune ( CPLR 3101[c] ); and trial preparation materials, which are subject to disclosure only on a showing of substantial need and undue hardship" ( Spectrum , at 376-377, 575 N.Y.S.2d 809, 581 N.E.2d 1055 ). The burden of establishing a right to protection under these provisions is with the party asserting it-"the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity" ( id. at 377, 575 N.Y.s.2d 809, 581 N.E.2d 1055 ).
In addition to these restrictions, this Court has recognized that "litigants are not without protection against unnecessarily onerous application of the discovery statutes. Under our discovery statutes and case law, competing interests must always be balanced; the need for discovery must be weighed against any special burden to be borne by the opposing party" ( Kavanagh v. Ogden Allied Maintenance Corp. , 92 N.Y.2d 952, 954, 683 N.Y.S.2d 156, 705 N.E.2d 1197 [1998] [citations and internal quotation marks omitted]; see CPLR 3103[a] ). Thus, when courts are called upon to resolve a dispute,[2] discovery *888 **163 requests "must be evaluated on a case-by-case basis with due regard for the strong policy supporting open disclosure ... Absent an [error of law or an] abuse of discretion," this Court will not disturb such a determination ( Andon , 94 N.Y.2d at 747, 709 N.Y.S.2d 873, 731 N.E.2d 589 ; see Kavanagh , 92 N.Y.2d at 954, 683 N.Y.S.2d 156, 705 N.E.2d 1197 ).[3]
Here, we apply these general principles in the context of a dispute over disclosure of social media materials. Facebook is a ***663 social networking website "where people can share information about their personal lives, including posting photographs and sharing information about what they are doing or thinking" ( Romano v. Steelcase Inc. , 30 Misc.3d 426, 429, 907 N.Y.S.2d 650 [Sup. Ct. Suffolk County 2010] ). Users create unique personal profiles, make connections with new and old "friends" and may "set privacy levels to control with whom they share their information" ( id. at 429-430, 907 N.Y.S.2d 650 ). Portions of an account that are "public" can be accessed by anyone, regardless of whether the viewer has been accepted as a "friend" by the account holder-in fact, the viewer need not even be a fellow Facebook account holder (see Facebook, Help Center, What audiences can I choose from when I share? https://www.facebook.com/help/211513702214269?helpref=faq_content [last accessed Jan. 15, 2018] ). However, if portions of an account are "private," this typically means that items are shared only with "friends" or a subset of "friends" identified by the account holder (id. ). While Facebook-and sites like it-offer relatively new means of sharing information with others, there is nothing so novel about Facebook materials that precludes application of New York's long-standing disclosure rules to resolve this dispute.
On appeal in this Court, invoking New York's history of liberal discovery, defendant argues that the Appellate Division erred in employing a heightened threshold for production of social media records that depends on what the account holder has chosen to share on the public portion of the account. We agree. Although it is unclear precisely what standard the Appellate Division applied, it cited its prior decision in Tapp v. New York State Urban Dev. Corp., 102 A.D.3d 620, 958 N.Y.S.2d 392 [1st Dept. 2013] ), which stated: "To warrant discovery, defendants must establish a factual predicate for their request by identifying relevant information in plaintiff's Facebook account -that is, information that 'contradicts or conflicts with plaintiff's alleged restrictions, disabilities, and losses, and other claims' " ( id. at 620, 958 N.Y.S.2d 392 [emphasis added] ). Several courts applying this rule appear to have conditioned discovery of material on the "private" portion of a Facebook account on whether the party seeking disclosure demonstrated there was material in the "public" portion that tended to contradict the injured party's allegations in some respect (see e.g. Spearin v. Linmar, L.P., 129 A.D.3d 528, 11 N.Y.S.3d 156 [1st Dept. 2015] ; Nieves v. 30 Ellwood Realty LLC , 39 Misc.3d 63, 966 N.Y.S.2d 808 [App. Term, 1st Dept. 2013] ;
***664 Pereira v. City of New York , 40 Misc.3d 1210[A], 2013 WL 3497615 [Sup. Ct. Queens County 2013] ;
**164 *889 Romano , supra , 30 Misc.3d 426, 907 N.Y.S.2d 650 ). Plaintiff invoked this precedent when arguing, in opposition to the motion to compel, that defendant failed to meet the minimum threshold permitting discovery of any Facebook materials.
Before discovery has occurred-and unless the parties are already Facebook "friends"-the party seeking disclosure may view only the materials the account holder happens to have posted on the public portion of the account. Thus, a threshold rule requiring that party to "identify[ ] relevant information in [the] Facebook account" effectively permits disclosure only in limited circumstances, allowing the account holder to unilaterally obstruct disclosure merely by manipulating "privacy" settings or curating the materials on the public portion of the account.[4] Under such an approach, disclosure turns on the extent to which some of the information sought is already accessible-and not, as it should, on whether it is "material and necessary in the prosecution or defense of an action" (see CPLR 3101[a] ).
New York discovery rules do not condition a party's receipt of disclosure on a showing that the items the party seeks actually exist; rather, the request need only be appropriately tailored and reasonably calculated to yield relevant information. Indeed, as the name suggests, the purpose of discovery is to determine if material relevant to a claim or defense exists. In many if not most instances, a party seeking disclosure will not be able to demonstrate that items it has not yet obtained contain material evidence. Thus, we reject the notion that the account holder's so-called "privacy" settings govern the scope of disclosure of social media materials.
That being said, we agree with other courts that have rejected the notion that commencement of a personal injury action renders a party's entire Facebook account automatically ***665 discoverable (see e.g. Kregg v. Maldonado , 98 A.D.3d 1289, 1290, 951 N.Y.S.2d 301 [4th Dept. 2012] [rejecting motion to compel disclosure of all social media accounts involving injured party without prejudice to narrowly-tailored request seeking only relevant information]; Giacchetto , 293 F.R.D. at 115 ; Kennedy v. Contract Pharmacal Corp. , 2013 WL 1966219, *2 [E.D.N.Y. May 13, 2013, No. CV 12-2664 (JFB)(ETB) ] ). Directing disclosure of a party's entire Facebook account is comparable to ordering discovery of every photograph or communication that party shared with any person on any topic prior to or since the incident giving rise to litigation-such an order would be likely to yield far more nonrelevant than relevant information. Even under our broad disclosure paradigm, litigants are protected from "unnecessarily onerous application of the discovery statutes" ( Kavanagh , 92 N.Y.2d at 954, 683 N.Y.S.2d 156, 705 N.E.2d 1197 ).
Rather than applying a one-size-fits-all rule at either of these extremes, courts addressing disputes over the scope of social media discovery should *890 **165 employ our well-established rules-there is no need for a specialized or heightened factual predicate to avoid improper "fishing expeditions." In the event that judicial intervention becomes necessary, courts should first consider the nature of the event giving rise to the litigation and the injuries claimed, as well as any other information specific to the case, to assess whether relevant material is likely to be found on the Facebook account. Second, balancing the potential utility of the information sought against any specific "privacy" or other concerns raised by the account holder, the court should issue an order tailored to the particular controversy that identifies the types of materials that must be disclosed while avoiding disclosure of nonrelevant materials. In a personal injury case such as this it is appropriate to consider the nature of the underlying incident and the injuries claimed and to craft a rule for discovering information specific to each. Temporal limitations may also be appropriate-for example, the court should consider whether photographs or messages posted years before an accident are likely to be germane to the litigation. Moreover, to the extent the account may contain sensitive or embarrassing materials of marginal relevance, the account holder can seek protection from the court (see CPLR 3103[a] ). Here, for example, Supreme Court exempted from disclosure any photographs of plaintiff depicting nudity or romantic encounters.
Plaintiff suggests that disclosure of social media materials necessarily constitutes an unjustified invasion of privacy. We ***666 assume for purposes of resolving the narrow issue before us that some materials on a Facebook account may fairly be characterized as private.[5] But even private materials may be subject to discovery if they are relevant. For example, medical records enjoy protection in many contexts under the physician-patient privilege (see CPLR 4504 ). But when a party commences an action, affirmatively placing a mental or physical condition in issue, certain privacy interests relating to relevant medical records-including the physician-patient privilege-are waived (see Arons v. Jutkowitz , 9 N.Y.3d 393, 409, 850 N.Y.S.2d 345, 880 N.E.2d 831 [2007] ; Dillenbeck v. Hess , 73 N.Y.2d 278, 287, 539 N.Y.S.2d 707, 536 N.E.2d 1126 [1989] ). For purposes of disclosure, the threshold inquiry is not whether the materials sought are private but whether they are reasonably calculated to contain relevant information.
Applying these principles here, the Appellate Division erred in modifying Supreme Court's order to further restrict disclosure of plaintiff's Facebook account, limiting discovery to only those photographs plaintiff intended to introduce at trial.[6] With respect to the items Supreme *891 **166 Court ordered to be disclosed (the only portion of the discovery request we may consider), defendant more than met his threshold burden of showing that plaintiff's Facebook account was reasonably likely to yield relevant evidence. At her deposition, plaintiff indicated that, during the period prior to the accident, she posted "a lot" of photographs showing her active lifestyle. Likewise, given plaintiff's acknowledged tendency to post photographs representative of her activities on Facebook, there was a basis to infer that photographs she posted after the accident might be reflective of her post-accident activities and/or limitations. The ***667 request for these photographs was reasonably calculated to yield evidence relevant to plaintiff's assertion that she could no longer engage in the activities she enjoyed before the accident and that she had become reclusive. It happens in this case that the order was naturally limited in temporal scope because plaintiff deactivated her Facebook account six months after the accident and Supreme Court further exercised its discretion to exclude photographs showing nudity or romantic encounters, if any, presumably to avoid undue embarrassment or invasion of privacy.
In addition, it was reasonably likely that the data revealing the timing and number of characters in posted messages would be relevant to plaintiffs' claim that she suffered cognitive injuries that caused her to have difficulty writing and using the computer, particularly her claim that she is painstakingly slow in crafting messages. Because Supreme Court provided defendant no access to the content of any messages on the Facebook account (an aspect of the order we cannot review given defendant's failure to appeal to the Appellate Division), we have no occasion to further address whether defendant made a showing sufficient to obtain disclosure of such content and, if so, how the order could have been tailored, in light of the facts and circumstances of this case, to avoid discovery of nonrelevant materials.[7]
In sum, the Appellate Division erred in concluding that defendant had not met his threshold burden of showing that the materials from plaintiff's Facebook account that were ordered to be disclosed pursuant to Supreme Court's order were reasonably calculated to contain evidence "material and necessary" to the litigation. A remittal is not necessary here because, in opposition to the motion, plaintiff neither made a claim of statutory privilege, nor offered any other specific reason-beyond the general assertion that defendant did not meet his threshold burden-why any of those materials should be shielded from disclosure.
Accordingly, the Appellate Division order insofar as appealed from should be reversed, with costs, the Supreme Court order reinstated and the certified question answered in the negative.
Order insofar as appealed from reversed, with costs, order of Supreme Court, New York County, reinstated and certified question answered in the negative.
***668 Judges Rivera, Stein, Fahey, Garcia, Wilson and Feinman concur.

Defendant's failure to appeal Supreme Court's order impacts the scope of his appeal in this Court. "Our review of [an] Appellate Division order is 'limited to those parts of the [order] that have been appealed and that aggrieve the appealing party' " (Hain v. Jamison , 28 N.Y.3d 524, 534 n. 3, 46 N.Y.S.3d 502, 68 N.E.3d 1233 [2016], quoting Hecht v. City of New York , 60 N.Y.2d 57, 61, 467 N.Y.S.2d 187, 454 N.E.2d 527 [1983] ). Because defendant did not cross-appeal and, thus, sought no affirmative relief from the Appellate Division, he is aggrieved by the Appellate Division order only to the extent it further limited Supreme Court's disclosure order.

While courts have the authority to oversee disclosure, by design the process often can be managed by the parties without judicial intervention. If the party seeking disclosure makes a targeted demand for relevant, non-privileged materials (see CPLR 3120[1][i], [2] [permitting a demand for items within the other party's "possession, custody or control," which "shall describe each item and category with reasonable particularity"] ), counsel for the responding party-after examining any potentially responsive materials-should be able to identify and turn over items complying with the demand. Attorneys, while functioning as advocates for their clients' interests, are also officers of the court who are expected to make a bona fide effort to properly meet their obligations in the disclosure process. When the process is functioning as it should, there is little need for a court in the first instance to winnow the demand or exercise its in camera review power to cull through the universe of potentially responsive materials to determine which are subject to discovery.

Further, the Appellate Division has the power to exercise independent discretion-to substitute its discretion for that of Supreme Court, even when it concludes Supreme Court's order was merely improvident and not an abuse of discretion-and when it does so applying the proper legal principles, this Court will review the resulting Appellate Division order under the deferential "abuse of discretion" standard (see e.g. Andon , supra ; Kavanagh , supra ; see generally Kapon , supra ).

This rule has been appropriately criticized by other courts. As one federal court explained, "[t]his approach can lead to results that are both too broad and too narrow. On the one hand, a plaintiff should not be required to turn over the private section of his or her Facebook profile (which may or may not contain relevant information) merely because the public section undermines the plaintiff's claims. On the other hand, a plaintiff should be required to review the private section and produce any relevant information, regardless of what is reflected in the public section ... Furthermore, this approach shields from discovery the information of Facebook users who do not share any information publicly" (Giacchetto v. Patchogue-Medford Union Free School Dist. , 293 F.R.D. 112, 114 [E.D.N.Y. 2013] ).

There is significant controversy on that question. Views range from the position taken by plaintiff that anything shielded by privacy settings is private, to the position taken by one commentator that "anything contained in a social media website is not 'private' ... [S]ocial media exists to facilitate social behavior and is not intended to serve as a personal journal shielded from others or a database for storing thoughts and photos" (McPeak, The Facebook Digital Footprint: Paving Fair and Consistent Pathways to Civil Discovery or Social Media Data, 48 Wake Forest L Rev 887, 929 [2013] ).

Because plaintiff would be unlikely to offer at trial any photographs tending to contradict her claimed injuries or her version of the facts surrounding the accident, by limiting disclosure in this fashion the Appellate Division effectively denied disclosure of any evidence potentially relevant to the defense. To the extent the order may also contravene CPLR 3101(i), we note that neither party cited that provision in Supreme Court and we therefore have no occasion to further address its applicability, if any, to this dispute.

At oral argument, Supreme Court indicated that, depending on what the data ordered to be disclosed revealed concerning the frequency of plaintiff's post-accident messages, defendant could possibly pursue a follow-up request for disclosure of the content. We express no views with respect to any such future application.