Siegel v Snyder (2021 NY Slip Op 07264)





Siegel v Snyder


2021 NY Slip Op 07264


Decided on December 22, 2021


Appellate Division, Second Department


Christopher, J., J.



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on December 22, 2021
SUPREME COURT OF THE STATE OF NEW YORK
Appellate Division, Second Judicial Department

CHERYL E. CHAMBERS, J.P.
ROBERT J. MILLER
BETSY BARROS
LINDA CHRISTOPHER, JJ.


2018-12888 
2019-01026
 (Index No. 6612/16)

[*1]Linda Siegel, etc., respondent,
v
Brian Snyder, etc., et al., defendants, Radiological Associates of Long Island, P.C., et al., appellants.



APPEAL by the defendants Radiological Associates of Long Island, P.C., and South Nassau Communities Hospital, in an action, inter alia, to recover damages for medical malpractice, from (1) an order of the Supreme Court (Denise L. Sher, J.), entered July 18, 2018, in Nassau County, and (2) an order of the same court entered January 18, 2019. The order entered July 18, 2018, insofar as appealed from, denied those branches of those defendants' motion which were pursuant to CPLR 3101(b) and, in effect, CPLR 3103, for a protective order limiting the scope of the plaintiff's notice of discovery and inspection dated November 23, 2016, and approving a proposed redaction of certain meeting minutes. The order entered January 18, 2019, insofar as appealed from, upon renewal, adhered to the prior determination denying those branches of those defendants' motion which were pursuant to CPLR 3101(b) and, in effect, CPLR 3103, for a protective order limiting the scope of the plaintiff's notice of discovery and inspection dated November 23, 2016, and approving a proposed redaction of certain meeting minutes.



Bartlett LLP, Mineola, NY (Robert G. Vizza of counsel), for appellants.
Sullivan Papain Block McGrath & Cannavo P.C., Garden City, NY (Stephen C. Glasser and Christopher J. Dellicarpini of counsel), for respondent.



CHRISTOPHER, J.


OPINION & ORDER
Introduction
The question presented herein involves Education Law § 6527(3) and Public Health Law § 2805-m(2), pursuant to which proceedings and records relating to medical or quality-assurance review meetings are protected from disclosure, except for those statements made therein by "any person in attendance at such a meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting," known as the party-statement exception (Education Law § 6527[3]; see Public Health Law § 2805-m[2]). The principal issue presented in this appeal is the scope of the quality-assurance privilege and the corresponding party-statement exception to the privilege. More specifically, the issue is whether a party asserting the quality-assurance privilege with regard to peer-review committee meetings has the burden of demonstrating that any statements made at such a meeting, claimed to be privileged, were made by a person who is not a party to an action. The appellants argue that the party-statement exception is automatically inapplicable when the meeting's minutes do not identify the speaker because it cannot be ascertained whether the speaker is a party or nonparty. For the reasons that follow, we conclude that the party asserting the quality-assurance privilege must demonstrate that any statements made at such a meeting that are claimed to be privileged were made by a nonparty. Therefore, where the meeting's minutes do not [*2]identify the speaker, the party-statement exception to the quality-assurance privilege applies. Accordingly, the Supreme Court properly determined that statements contained in the defendant South Nassau Communities Hospital's peer-review committee meeting minutes that were attributed to the "committee," or wherein the speaker was not identified, were not entitled to the quality-assurance privilege afforded by Education Law § 6527(3) and Public Health Law § 2805-m(2), as it could not be determined if those statements were in fact made by a nonparty.
Factual and Procedural Background
In November 2015, the decedent, Michael Siegel, was transported to the defendant South Nassau Communities Hospital (hereinafter SNCH) after he was struck by a car and sustained a head injury. At SNCH, the decedent was evaluated and treated for his injuries by, among others, the defendant physicians Kenneth Becker and Matthew Lurin. The decedent suffered from, inter alia, a skull fracture, hemorrhaging and contusions in the frontal and temporal lobes, a subdural hematoma, and eventually herniation of the brain, progressing toward brain death. He died shortly after being removed from life support.
On December 21, 2015, a "Trauma Peer Review Committee" meeting was held, at which the decedent's treatment was reviewed for quality assurance and medical malpractice prevention. Follow-up meetings took place on January 8, 2016, and February 22, 2016. Both Becker, who was the Trauma Medical Director, and Lurin, who was the Assistant Director of the Emergency Department, were in attendance at the meetings. The minutes of the December 21, 2015 meeting contain statements attributed to, inter alia, the "committee," along with one statement attributed to the "Trauma Medical Director."
The plaintiff commenced this action in September 2016, among other things, to recover damages for medical malpractice, and thereafter served combined demands for discovery and inspection dated November 23, 2016. The plaintiff sought, inter alia, hospital records and incident reports, including, among other things, all peer-review reports. The defendants SNCH and Radiological Associates of Long Island, P.C. (hereinafter together the defendants), moved, inter alia, pursuant to CPLR 3101(b) and, in effect, CPLR 3103, for a protective order based upon the privileges set forth in Education Law § 6527(3) and Public Health Law § 2805-m. The defendants sought to limit the plaintiff's combined demands, to protect SNCH's peer-review committee meeting minutes from disclosure, and to limit the plaintiff's notice for discovery and inspection to include only those portions of the peer-review committee meeting minutes that constituted statements made by an individually named defendant concerning the care and treatment of the decedent. The defendants also submitted to the Supreme Court a proposed redaction of the peer-review committee meeting minutes, and sought a determination that the party-statement exception applied only to a notation that Becker and Lurin were present at the meetings and a single statement in the December 21, 2015 minutes that was made by Becker. The defendants asserted that the redacted portions of the minutes reflected only discussions of the committee and did not contain any party statements and, therefore, were not discoverable.
In an order entered July 18, 2018, the Supreme Court, after reviewing the unredacted minutes in camera, inter alia, denied those branches of the defendants' motion which were pursuant to CPLR 3101(b) and, in effect, CPLR 3103, for a protective order based upon the privileges set forth in Education Law § 6527(3) and Public Health Law § 2805-m, and for approval of their proposed redaction of the meeting minutes. The court found that it was unable to determine who provided specific statements and/or information at the peer-review committee meeting when the "statements and/or information contained in the minutes are attributed to the 'committee.'" The court opined that it was not satisfied with the representation that the statements in the peer-review committee discussion section of the minutes were made by the "committee," as someone at the meeting, "who may or may not be a party defendant, made a conclusion upon which the committee agreed." The court determined that, without any indication as to who specifically made the statements, it was unable to determine if certain statements were privileged. The defendants thereafter moved for leave to renew and reargue those branches of their motion which were pursuant to CPLR 3101(b) and, in effect, CPLR 3103, for a protective order, and for approval of their proposed redaction of the meeting minutes, contending, among other things, that when peer-review committee minutes are written, they are not intended to identify the individuals who are speaking. In an order entered January 18, 2019, the court, upon renewal, adhered to the prior determination. The court opined that it still could not "determine who provided specific statements and/or information since all of the statements and/or information contained in the subject minutes are [*3]attributed to the 'committee.'" The court determined that it could not "rule on the admissibility of the information in the hospital peer review committee meeting minutes without knowing if the 'discussions' referenced in said minutes involve 'statements made by any person in attendance at such a meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting.'" The defendants appeal from both orders.
Discussion
1. Liberal Discovery and Privileges
New York's liberal discovery policy, generally governed by CPLR 3101(a), broadly mandates "full disclosure of all matter material and necessary in the prosecution or defense of an action" (see Forman v Henkin, 30 NY3d 656, 661; Kavanagh v Ogden Allied Maintenance Corp., 92 NY2d 952, 954; McAlwee v Westchester Health Assoc., PLLC, 163 AD3d 547, 548). "The words, 'material and necessary', are . . . to be interpreted liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial" (Allen v Crowell-Collier Publ. Co., 21 NY2d 403, 406; see Forman v Henkin, 30 NY3d at 661). The "statute embodies the policy determination that liberal discovery encourages fair and effective resolution of disputes on the merits, minimizing the possibility for ambush and unfair surprise" (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d 371, 376; see Forman v Henkin, 30 NY3d at 661). "The purpose of disclosure procedures is to advance the function of a trial to ascertain truth and to accelerate the disposition of suits" (Rios v Donovan, 21 AD2d 409, 411; see Swartzenberg v Trivedi, 189 AD2d 151, 153).
However, notwithstanding the broad right to disclosure, "the CPLR establishes three categories of protected materials, also supported by policy considerations: privileged matter, absolutely immune from discovery (CPLR 3101[b]); attorney's work product, also absolutely immune (CPLR 3101[c]); and trial preparation materials, which are subject to disclosure only on a showing of substantial need and undue hardship" (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 376-377; see Forman v Henkin, 30 NY3d at 661-662). "Obvious tension exists between the policy favoring full disclosure and the policy permitting parties to withhold relevant evidence. Consequently, the burden of establishing any right to protection is on the party asserting it; the protection claimed must be narrowly construed; and its application must be consistent with the purposes underlying the immunity" (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 377; see Forman v Henkin, 30 NY3d at 661-662).
In analyzing the privilege prohibiting disclosure of proceedings and records relating to a medical or quality-assurance review meeting pursuant to Education Law § 6527(3) and Public Health Law § 2805-m(2), we look to other privileges that are recognized in New York for guidance, as to the extent of the privilege and the limits of the party-statement exception.
Article 45 of the CPLR contains, inter alia, the evidentiary privileges based on confidential communications between, among others, attorney and client (see CPLR 4503); physician, dentist, podiatrist, chiropractor, nurse and patient (see CPLR 4504); spouses (see CPLR 4502); psychologist and client (see CPLR 4507); social worker and client (see CPLR 4508); and clergy and penitent (see CPLR 4505). These privileges, by maintaining confidentiality, serve the public policy of promoting free disclosure of sensitive information in certain types of relationships, and thereby encourage individuals to seek necessary assistance (see generally Matter of Grand Jury Proceedings [Doe], 56 NY2d 348, 352-353).
Reviewing the history of privilege, "[t]he attorney-client privilege [is] the oldest among common-law evidentiary privileges" (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 377; see Mayorga v Tate, 302 AD2d 11, 13), dating back to at least 1577, and the English case of Berd v Lovelace (21 Eng Rep 33 [1577]), where it was ordered that a solicitor in a suit who had received fees from the defendant would not be compelled to be deposed (see id.; Richard S. Pike, The English Law of Legal Professional Privilege: A Guide for American Attorneys, 4 Loy U Chi Int'l L Rev 51 [Fall/Winter 2006]). Subsequently, the reason for the privilege was explained as based upon the interests of justice; without the privilege, everyone would be deprived of professional assistance; they would not consult a counselor, or would only tell a counselor "half [of their] case" (Greenough v Gaskell, 39 Eng Rep 618, 621 [1833]). In 1877, New York enacted a law "which codified the common-law [attorney-client] privilege (former Code of Remedial Justice § 835, later Code of Civil Procedure § 835)" (Mayorga v Tate, 302 AD2d at 13). At the same time, a statute was also enacted (former Code of Remedial Justice § 836, later former Code of Civil Procedure § 836) that expanded the privilege by making waiver of the privilege more difficult than it had been under the common law (see Matter of Cunnion, 201 NY 123; Mayorga v Tate, 302 AD2d at 13). However, [*4]under the current version of the statute found in CPLR 4503, the more stringent rules regarding waiver have been relaxed, and courts must now look to the common law for defining that which is encompassed by the privilege (see Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 377; Mayorga v Tate, 302 AD2d at 13). The attorney-client privilege "exists to ensure that one seeking legal advice will be able to confide fully and freely in his [or her] attorney, secure in the knowledge that his [or her] confidences will not later be exposed to public view to his [or her] embarrassment or legal detriment" (Matter of Priest v Hennessy, 51 NY2d 62, 67-68; see Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d 616, 623). Nevertheless, the privilege may be waived by the client (see CPLR 4503[a]). "A waiver of the attorney-client privilege may be found where the client places the subject matter of the privileged communication in issue or where invasion of the privilege is required to determine the validity of the client's claim or defense and application of the privilege would deprive the adversary of vital information. Moreover, a waiver may be found where a party engages in selective disclosure, as a party may not rely on the protection of the privilege regarding damaging communications while disclosing other self-serving communications" (Soussis v Lazer, Aptheker, Rosella & Yedid, P.C., 91 AD3d 753, 754 [citations and internal quotation marks omitted]; see e.g. 601 Realty Corp. v Conway, Farrell, Curtin & Kelly, P.C., 74 AD3d 1179, 1180 [finding that the invasion of the attorney-client privilege with respect to certain documents was required in order for the defendants to assert their defense to the legal malpractice action at trial]). Additionally, the protection of the attorney-client privilege is curtailed to the extent that certain exceptions to the privilege have been created (see e.g. CPLR 4503[b] [exception for deceased client's communications with counsel as to the preparation, execution, or revocation of any will, revocable trust, or other relevant instrument]; Matter of Grand Jury Subpoena, 1 AD3d 172 [exception for communications in furtherance of fraud or crime]).
Moreover, "[b]ecause the [attorney-client] privilege shields from disclosure pertinent information and therefore constitutes an obstacle to the truth-finding process, it must be narrowly construed" (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d at 624 [internal quotation marks omitted]; see Matter of Jacqueline F., 47 NY2d 215, 219). The Court of Appeals has, in effect, limited the availability of the attorney-client privilege by limiting the application of the common interest doctrine, which provides that while "[g]enerally, communications between an attorney and a client that are made in the presence of or subsequently disclosed to third parties are not protected by the attorney-client privilege[, u]nder the . . . doctrine . . . , an attorney-client communication that is disclosed to a third party remains privileged if the third party shares a common legal interest with the client who made the communication and the communication is made in the furtherance of that common legal interest" (Ambac Assur. Corp. v Countrywide Home Loans, Inc., 27 NY3d at 620). The Court of Appeals determined, "as the courts in New York have held for over two decades, that any such communication must also relate to litigation, either pending or anticipated, in order for the exception to apply" (id.). The Court reasoned that it did not "perceive a need to extend the common interest doctrine to communications made in the absence of pending or anticipated litigation, and any benefits that may attend such an expansion of the doctrine are outweighed by the substantial loss of relevant evidence, as well as the potential for abuse" (id. at 629). The Court concluded that "the policy reasons for keeping a litigation limitation on the common interest doctrine outweigh any purported justification for doing away with it, and therefore maintained the narrow construction that New York courts have traditionally applied" (id. at 632).
Another evidentiary privilege found in article 45 of the CPLR is the physician-patient privilege, which, unlike the attorney-client privilege, was not recognized at common law (see Matter of Grand Jury Investigation in N.Y. County, 98 NY2d 525, 529; People v Sinski, 88 NY2d 487, 491; Hughson v St. Francis Hosp. of Port Jervis, 93 AD2d 491, 496-497). "In 1828 New York became the first jurisdiction to change the common-law rule when it established a statutory privilege between physician and patient" (Koump v Smith, 25 NY2d 287, 293; see Hughson v St. Francis Hosp. of Port Jervis, 93 AD2d at 497). Presently, the physician-patient privilege is found in CPLR 4504, and prohibits the physician, dentist, nurse, or other medical personnel "from disclosing information acquired in attending a patient in a professional capacity, and which was necessary to enable him [or her] to act in that capacity" (Hughson v St. Francis Hosp. of Port Jervis, 93 AD2d at 497; see CPLR 4504). The rationale supporting the privilege, similar to that of the attorney-client privilege and other evidentiary privileges based on confidential communications, is that the "protection of confidential information from involuntary disclosure will promote uninhibited communication[, in this case,] between patient and physician for the purpose of obtaining appropriate medical treatment" (People v Sinski, 88 NY2d at 491; see Hughson v St. Francis Hosp. of Port Jervis, 93 AD2d at 497). [*5]However, the "privilege generally does not extend to information obtained outside the realms of medical diagnosis and treatment" (Matter of Grand Jury Investigation in N.Y. County, 98 NY2d at 530; see Hughson v St. Francis Hosp. of Port Jervis, 93 AD2d at 499). The physician-patient privilege may be waived by the patient, and with regard to waiver, "over the years there has been a tendency towards relaxation of the privilege" (Hughson v St. Francis Hosp. of Port Jervis, 93 AD2d at 500; see CPLR 4504[a]).
Moreover, while the Court of Appeals has stated that the physician-patient privilege is to be given a "broad and liberal construction to carry out its policy" (Matter of Grand Jury Investigation of Onondaga County, 59 NY2d 130, 134 [internal quotation marks omitted]; see Matter of Grand Jury Investigation in N.Y. County, 98 NY2d at 531), the legislature has enacted a number of narrow exceptions abrogating the privilege for public policy reasons to serve what it deems to be greater interests (see People v Rivera, 25 NY3d 256, 263; see e.g. Social Services Law §§ 413, 415 [regarding reports of suspected child abuse and maltreatment], 384-b[3][h] [regarding proceedings for guardianship and custody of destitute or dependent children]; Family Ct Act § 1046[a][vii] [regarding child abuse and neglect proceedings]; CPLR 4504[b] [regarding disclosure of "information indicating that a patient who is under the age of sixteen years has been the victim of a crime"], [c] [regarding "information as to the mental or physical condition of a deceased patient"]; Mental Hygiene Law § 81.09[d] [regarding records of an alleged incapacitated person in a guardianship proceeding]; Penal Law § 265.25 [requiring medical professionals and hospitals to report "(e)very case of a bullet wound, gunshot wound, powder burn or any other injury arising from or caused by the discharge of a gun or firearm, and every case of a wound which is likely to or may result in death and is actually or apparently inflicted by a knife, icepick or other sharp or pointed instrument"]).
Additionally, notwithstanding the physician-patient privilege, in certain circumstances where "the legislature had created a statutory scheme that charged a governmental body with enforcing certain health care laws . . . [the Court of Appeals has] held that the need for the disclosure of confidential records was implied from the powers that the legislature conferred on the governmental body" (People v Rivera, 25 NY3d at 264; see e.g. Matter of New York City Health & Hosps. Corp. v New York State Commn. of Correction, 19 NY3d 239, 245 [finding implied exception to the privilege in connection with deceased inmate's hospital records "from the Legislature's express
provisions detailing the Commission's responsibilities and powers, particularly with respect to investigating inmate deaths through its Medical Review Board"]; Matter of Camperlengo v Blum, 56 NY2d 251, 255-256 [finding implied exception to the privilege in connection with investigation of Medicaid billing practices where the "Federal and State record-keeping and reporting requirements evidence a clear intention to abrogate the . . . privilege to the extent necessary to satisfy the important public interest in seeing that Medicaid funds are properly applied"]; People v Fuller, 24 NY2d 292, 306-307 [finding implied exception to the privilege in connection with medical records and statements received in evidence at addiction hearing for purpose of securing treatment under Mental Hygiene Law former § 200 et seq.]).
Another privilege recognized in New York is the public-interest privilege which is invoked to protect the public interest from harm that might be suffered if sensitive material consisting of "confidential communications between public officers, and to public officers, in the performance of their duties" were to be divulged (Matter of World Trade Ctr. Bombing Litig., 93 NY2d 1, 8 [internal quotation marks omitted]; Ren Zheng Zheng v Bermeo, 114 AD3d 743, 744 [internal quotation marks omitted]). "The justification for the privilege is that the public interest might otherwise be harmed if extremely sensitive material were to lose this special shield of confidentiality" (Matter of World Trade Ctr. Bombing Litig., 93 NY2d at 8; Ren Zheng Zheng v Bermeo, 114 AD3d at 744 [internal quotation marks omitted]). The inquiry as to whether the privilege attaches requires a balancing test whereby "the encouragement of candor in the development of policy [is weighed] against the degree to which the public interest may be served by disclosing information which elucidates the governmental action taken" (Matter of World Trade Ctr. Bombing Litig., 93 NY2d at 9 [internal quotation marks omitted]).
2. Education Law § 6527(3) and Public Health Law § 2805-m
It is against this backdrop of the tension created by the competing public policy interests that favor protection of certain communications and those that favor other policy interests, including the truth-searching process of our judicial system, that we address the scope of the quality- [*6]assurance privilege and corresponding party-statement exception set forth in Education Law § 6527(3) and Public Health Law § 2805-m(2).
Public Health Law § 2805-j provides, in pertinent part, that "[e]very hospital shall maintain a coordinated program for the identification and prevention of medical . . . malpractice." Such a program must include at least, among other things, the "establishment of a quality assurance committee with the responsibility to review the services rendered in the hospital in order to improve the quality of medical . . . care of patients and to prevent medical . . . malpractice" (id. § 2805-j[1][a]).
Education Law § 6527(3) shields from disclosure under article 31 of the CPLR "the proceedings [and] the records relating to performance of a medical or a quality assurance review function or participation in a medical . . . malpractice prevention program," as well as testimony of any person in attendance at such a meeting when a medical or quality assurance review function or medical malpractice prevention program was performed (see Logue v Velez, 92 NY2d 13, 16-17). "The purpose of the discovery exclusion is to enhance the objectivity of the review process and to assure that medical review committees may frankly and objectively analyze the quality of health services rendered by hospitals. By guaranteeing confidentiality to quality review and malpractice prevention procedures, this provision is designed to encourage thorough and candid peer review of physicians, and thereby improve the quality of medical care" (id. at 17 [citation and internal quotation marks omitted]; see vanBergen v Long Beach Med. Ctr., 277 AD2d 374, 374). Public Health Law § 2805-m(2) affords similar protection from disclosure for "records, documentation or committee actions or records" required pursuant to, inter alia, Public Health Law 2805-j.
However, both Education Law § 6527(3) and Public Health Law § 2805-m(2) provide for identical exceptions for the discovery of party statements, that is, "'statements made by any person in attendance at such a [quality control or medical malpractice] meeting who is a party to an action or proceeding the subject matter of which was reviewed at such meeting'" (Lamacchia v Schwartz, 94 AD3d 712, 714, quoting Logue v Velez, 92 NY2d at 18 [internal quotation marks omitted]; see Education Law § 6527[3]; Public Health Law § 2805-m[2]). "The evident purpose of this provision is to permit discovery of statements given by a physician or other health professional in the course of a hospital's review of the facts and circumstances of an earlier incident which had given rise to a malpractice action" (Logue v Velez, 92 NY2d at 18-19; see Lamacchia v Schwartz, 94 AD3d at 714). Those persons whose conduct is subject to review were not intended to benefit from the protections afforded by the statutes (see vanBergen v Long Beach Med. Ctr., 277 AD2d at 374-375).
a. It is the Defendants' Burden to Demonstrate Entitlement to the Quality-Assurance
Privilege
As with other privileges, it is the party seeking to invoke the quality-assurance privilege pursuant to Education Law § 6527(3) and Public Health Law § 2805-m that has the burden of establishing a right to the protection of the privilege (see Robertson v Brookdale Hosp. Med. Ctr., 153 AD3d 743, 744; Daly v Brunswick Nursing Home, Inc., 95 AD3d 1262, 1263; Marte v Brooklyn Hosp. Ctr., 9 AD3d 41, 46). Therefore, that party must demonstrate that the documents sought were prepared in accordance with the relevant statutes (see Robertson v Brookdale Hosp. Med. Ctr., 153 AD3d at 744). "The party asserting the privilege, is required at a minimum, to show that it has a review procedure and that the information for which the exemption is claimed was obtained or maintained in accordance with that review procedure" (id. [internal quotation marks omitted]; see Kivlehan v Waltner, 36 AD3d 597, 599; Bush v Dolan, 149 AD2d 799, 800-801). Here, it is undisputed that the defendants met their initial burden of demonstrating that the "Trauma Peer Review Committee" meeting minutes at issue were prepared in accordance with the relevant statutes, Education Law § 6527(3), and Public Health Law § 2805-m, as they were created as part of a required quality-assurance review program, and therefore are protected from disclosure (see Robertson v Brookdale Hosp. Med. Ctr., 153 AD3d at 744).
However, this case presents the additional question of whether the privilege extends to those statements in the minutes that were attributed to the "committee" or wherein the speaker is not identified. The defendants argue that the privilege extends to those statements, as they were not made by a party, and therefore the party-statement exception does not apply. The plaintiff, in contrast, contends that the party-statement exception applies to the statements attributed to the committee, as it was the defendants' burden to demonstrate that any statements being withheld from [*7]disclosure were not made by a party. Guided by the well-settled principles previously discussed herein, we find that as the party seeking to assert the quality-assurance privilege, it was the defendants' burden to demonstrate that the statements they sought to withhold from disclosure were not party statements subject to disclosure (see Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 377; Robertson v Brookdale Hosp. Med. Ctr., 153 AD3d at 744). By failing to properly identify each speaker, the defendants have failed to establish its entitlement to the quality-assurance privilege, as they have not met their burden of demonstrating that the statements were not made by a party.
We find the rationale and analysis of the Appellate Division, Fourth Department, in Swartzenberg v Trivedi (189 AD2d 151) instructive, notwithstanding that the facts of that case are dissimilar. In Swartzeberg v Trivedi, in an action alleging that a defendant physician's negligence was the cause of the plaintiff's decedent's death, the court found that a letter written by the defendant physician, who had not attended a medical quality-assurance review committee meeting, and which was written in response to the committee's request that he explain his conduct, was not immune from disclosure pursuant to Education Law § 6527(3). The Fourth Department found that while "[a] hypertechnical reading of the statute might suggest that [the defendant physician's] letter is immune from disclosure, . . . such an interpretation would not serve any statutory purpose" (Swartzenberg v Trivedi, 189 AD2d at 153). The court noted that the statute was not intended to protect those persons such as the defendant physician "whose conduct is the subject of review" (id.). The court reasoned that "granting immunity from disclosure to a letter from a physician under review would subvert the [party-statement] exception to the immunity provided by Education Law § 6527(3)" (id.), since had the physician "appeared at a medical or quality assurance review meeting and made the statement embodied in his letter, that statement would be subject to disclosure" (id. at 154). Further, the court opined that "[t]he statutory exception to immunity from disclosure would be rendered meaningless if it could be avoided merely by submitting a written statement instead of appearing personally and making the same statement before a review committee" (id.).
Similarly, if we were to countenance the defendants' argument that they are not required to demonstrate that unidentified statements in the minutes were made by nonparties in order for those statements to be protected from disclosure and not subject to the party-statement exception, hospitals and medical providers would be incentivized to cloak all statements made at peer- review/quality-assurance meetings as having been made by the "committee," or some other unidentifiable source, and never attribute statements made at such meetings to any specific doctor whether or not they may be a party. This would afford them the benefits of the quality-assurance privilege and immunize them from the party-statement exception. This line of reasoning, urged by the defendants, would effectively render the party-statement exception meaningless and would subvert the intent of the legislature, which was to permit the discovery of statements made by parties at incident review meetings (see id.; see also Drum v Collure, 161 AD3d 1509, 1510 [finding that a power point slide show presented by a defendant physician at a quality-assurance review meeting that concerned the plaintiff's care, was a statement within the ambit of the party-statement exception and therefore was discoverable]; Koithan v Zornek, 226 AD2d 1080 [finding that the notes of a defendant physician were statements within the ambit of the party-statement exception and were, therefore, discoverable]).
Contrary to the defendants' contention, requiring them to demonstrate that the statements sought to be protected from disclosure were not made by a party does not "extend the statements exception to a point where it would swallow the general rule that materials used by a hospital in quality review and malpractice prevention programs are strictly confidential" (Logue v Velez, 92 NY2d at 19). Our determination herein does not result in an expansion of the party-statement exception to the privilege; it merely is in line with the well-settled principle that "the burden of establishing any right to protection is on the party asserting it" (Spectrum Sys. Intl. Corp. v Chemical Bank, 78 NY2d at 377). Requiring a defendant who is asserting the quality-assurance privilege to identify who made the statements at a medical or quality assurance review meeting, so as to demonstrate that no party statements subject to disclosure are being withheld, will further the goals of the quality-assurance privilege, rather than abrogate the privilege, as argued by the defendants. By identifying the maker of the statements at the medical or quality-assurance review meetings, only those statements that are made by a party will be subject to disclosure, and only those statements entitled to protection from disclosure will be protected. Further, as argued by the defendants, it may be true that the statutes and regulations setting forth the requirements for medical or quality-assurance review committee meetings do not require the identification of the speaker for [*8]any particular statement made at the meeting. However, that is a separate issue, and does not have any bearing on the fact that in order to avail itself of the privilege afforded by Education Law § 6527(3) and Public Health Law § 2805-m(2), the party asserting the privilege must demonstrate that no party statements subject to disclosure are being withheld, and thus must identify who said what at the meeting.
Accordingly, the Supreme Court properly determined that, in effect, the party-statement exception applied to those statements in the peer-review committee meeting minutes that were attributed to the committee, and for which there was no indication as to who specifically made the statements, as they were not entitled to the quality-assurance privilege set forth in Education Law § 6527(3) and Public Health Law § 2805-m(2).
b. Corrective Actions Set Forth in the Peer-Review Committee Minutes are Not Discoverable
As the defendants correctly argue, any reference in the minutes to corrective actions to be taken subsequent to the inquiry regarding the decedent's care and treatment are beyond the scope of the party-statement exception, and therefore are not discoverable. The notations in the "action" and "status" columns in the December 21, 2015 peer-review committee meeting minutes, as well as the entirety of the January 18, 2016, and February 22, 2016 follow-up peer-review committee meeting minutes, only deal with subsequent corrective actions for the future, and do not contain statements by a party regarding the care and treatment of the decedent; thus, they do not fall under the ambit of the party-statement exception (see Education Law § 6527[3]; Public Health Law § 2805-m[2]; Logue v Velez, 92 NY2d at 19; cf. D'Angelis v Buffalo Gen. Hosp., 2 AD3d 1477, 1478). Moreover, in opposition to the defendants' motion seeking, inter alia, a protective order, the plaintiff noted that she did not seek discovery of a copy of any documentation of the corrective action plan. Accordingly, the Supreme Court should have granted those branches of the defendants' motion which were for a protective order with respect to the notations in the "action" and "status" columns in the December 21, 2015 peer-review committee meeting minutes, as well as for the entirety of the January 18, 2016, and February 22, 2016 follow-up peer-review committee meeting minutes.
The plaintiff's remaining contention is without merit.
Conclusion
Accordingly, for the reasons stated herein, the order entered January 18, 2019, is modified, on the law, by deleting the provision thereof, upon renewal, adhering to the prior determination denying those branches of the defendants' motion which were pursuant to CPLR 3101(b), and, in effect, CPLR 3103, for a protective order limiting the scope of the plaintiff's notice of discovery and inspection dated November 23, 2016, and for approval of a proposed redaction of the minutes, and substituting therefor a provision, upon renewal, vacating the prior determination and granting those branches of the motion to the extent that the defendants may withhold (1) the entirety of the December 21, 2015 Trauma Peer Review Committee meeting minutes pertaining to the decedent, Michael Siegel, except for those statements set forth in the Peer Review Committee Discussion section of said December 21, 2015 minutes which were made by a named defendant or wherein the speaker is unidentified; and (2) the entirety of the January 18, 2016 and February 22, 2016 Trauma Peer Review Committee meeting minutes pertaining to the decedent. The December 21, 2015, January 18, 2016, and February 22, 2016 meeting minutes shall be redacted accordingly. As so modified, the order is affirmed insofar as appealed from.
CHAMBERS, J.P., MILLER and BARROS, JJ., concur.
ORDERED that the appeal from the order entered July 18, 2018, is dismissed, as that order was superseded by the order entered January 18, 2019, made upon renewal; and it is further,
ORDERED that the order entered January 18, 2019, is modified, on the law, by deleting the provision thereof, upon renewal, adhering to the prior determination denying those branches of the motion of the defendants Radiological Associates of Long Island, P.C., and South Nassau Communities Hospital which were pursuant to CPLR 3101(b), and in effect, CPLR 3103, for a protective order limiting the scope of the plaintiff's notice of discovery and inspection dated November 23, 2016, and for approval of a proposed redaction of certain meeting minutes, and substituting therefor a provision, upon renewal, vacating the prior determination and granting those [*9]branches of the motion to the extent that the defendants Radiological Associates of Long Island, P.C., and South Nassau Communities Hospital may withhold (1) the entirety of the December 21, 2015 Trauma Peer Review Committee meeting minutes pertaining to the decedent, Michael Siegel, except for those statements set forth in the Peer Review Committee Discussion section which were made by a named defendant or wherein the speaker is unidentified; and (2) the entirety of the January 18, 2016 and February 22, 2016 Trauma Peer Review Committee meeting minutes pertaining to the decedent, Michael Siegel, and the December 21, 2015, January 18, 2016, and February 22, 2016 meeting minutes shall be redacted accordingly; as so modified, the order is affirmed insofar as appealed from; and it is further,
ORDERED that one bill of costs is awarded to the plaintiff.
ENTER:
Maria T. Fasulo
Clerk of the Court